**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 97-30895

ANDRE MOUTON,

Plaintiff-Appellee,

versus

METROPOLITAN LIFE INSURANCE COMPANY; RODNEY SCHMIDT,

Defendants-Appellants.

Appeal from the United States District Court
for the Western District of Louisiana

July 31, 1998

Before WISDOM, KING, and DAVIS, Circuit Judges:

WISDOM, Circuit Judge:

## I. Introduction

This case presents a matter of first impression in this Court.

It requires us to decide whether a securities dealer who agreed to

arbitrate "any dispute, claim or controversy that may arise between

[himself] and [his] firm" is compelled to arbitrate his Title VII

discrimination claim against his employer.

Andre Mouton ("Mouton") worked as a sales agent for

Metropolitan Life Insurance Co. ("Metropolitan"), a member firm of the National Association of Securities Dealers ("NASD"). As a seller of mutual funds, he was required to be licensed by the NASD. In 1989, he submitted a Uniform Application of Securities Industry Regulation, also known as a U-4 Registration, to the NASD for the purpose of procuring a license. Under the terms of the application, Mouton agreed to:

> arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions or by-laws of the [NASD] as may be amended from time to time.

At the time Mouton submitted his application, § 1 of the NASD Code provided, in pertinent part, that arbitration was required for:

> any dispute, claim or controversy arising out of or in connection with the business of any member of the Association, with the exception of disputes involving the insurance business of any member which is also an insurance company:
>
> (2) between or among members and public customers, or others.

Section 8 of the Code further provided, in pertinent part, that:

> any dispute, claim or controversy ... between or among members and/or associated persons, and/or certain others,

2

arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), shall be arbitrated under this Code, at the instance of:

(2) a member against a person associated with a member of a person associated with a member against a member.

"Section 1 [of the NASD Code] defines the general universe of issues that may be arbitrated, and § 8 describes a subset of that universe that must be arbitrated under the [NASD] Code."[1]

In 1993, the Securities and Exchange Commission amended § 1 of its NASD rules to provide for:

the arbitration of any dispute, claim or controversy arising out of or in connection with the business of any member of the [NASD] or arising out of the employment or termination of employment of associated person(s) with any member, with the exception of disputes involving the insurance business of any member which is also an insurance company.

Mouton did not file a second U-4 Registration after the 1993 amendments to the NASD Code took effect.

In July 1995, Mouton testified against Metropolitan in a Title VII sexual harassment action brought by one of his co-workers. At

---

[1] *Armijo v. Prudential Insurance Co. of America*, 72 F.3d 793, 798 (10th Cir. 1995).

the time of his testimony, Mouton was on disability leave stemming from a work-related accident that occurred in 1994. Mouton alleges that when he attempted to return to work in 1995, Metropolitan embarked on a course of unlawful employment action against him in retaliation for the unfavorable testimony he gave earlier in the year. This retaliation, says Mouton, culminated in the termination of his employment in February 1996. Mouton received a right to sue letter from the EEOC, and filed his own Title VII complaint against Metropolitan on December 18, 1996.

Metropolitan sought summary judgment under the Federal Arbitration Act[2] on the basis that Mouton had entered into a binding agreement with the NASD to arbitrate all claims arising from his employment with Metropolitan. The district court denied the motion on the ground that a genuine issue of material fact existed regarding whether the 1989 NASD Code, which, unlike the

_____

[2] 9 U.S.C. § 1 et seq. The Federal Arbitration Act provides the authority for the enforcement of arbitration clauses as a matter of federal law. *In re Prudential Insurance Co. of America Sales Practice Litigation*, 133 F.3d 225, 230 (3d Cir. 1998).

1993 amended version, did not specifically require arbitration of employment-related disputes, required him to arbitrate his Title VII claim.  The district court did, however, grant Metropolitan's subsequent motion to stay further proceedings pending its appeal of the denial of its motion for summary judgment.  We hold that Mouton is required to submit his Title VII action to arbitration. Metropolitan is therefore entitled to a summary judgment in its favor.

## II. Discussion

We review the denial of summary judgment <u>de novo</u>, applying the same standard the district court applied.[3]

### A. Scope of the pre-1993 NASD Arbitration Provisions

Our first task is to decide whether the pre-1993 NASD Code required arbitration of employment disputes such as that brought by Mouton.  If we conclude that it did, we need not decide what

---

[3] *Blackwell v. Barton*, 34 F.3d 298, 301 (5th Cir. 1994).

5

effect, if any, the 1993 amendments to the Code had on Mouton's

licensing agreement.  The majority of circuits which have

considered this precise issue have concluded that the pre-1993

NASD Code mandated arbitration of employment-related disputes.[4]

For the following reasons, we side with the plain weight of

authority.

First, the NASD, itself, has made it abundantly clear that

the pre-1993 Code's arbitration provisions encompassed

employment-related controversies.  In 1987, it stated that

employment disputes between its members and their registered

representatives, such as securities dealers, were subject to

_____

[4] See *Seus v. John Nuveen & Co.,* Inc., 1998 WL 294020 (3d Cir. (Pa.)); *Thomas James Associates, Inc. v. Jameson*, 102 F.3d 60 (2d Cir. 1996); *Armijo v. Prudential Insurance Co. of America*, 72 F.3d 793 (10th Cir. 1995); *Kidd v. Equitable Life Assurance Society of the United States*, 32 F.3d 516 (11th Cir. 1994). See also *Association of Investment Brokers v. Securities and Exchange Commission*, 676 F.2d 857, 861 (D.C. Cir. 1982) (NASD rules mandate arbitration of employer-employee disputes, and did so, to the same extent, as they do now, before the development of [U-4 forms])(dicta). But see *Duffield v. Robertson Stephens & Co.*, 1998 WL 227469 (9th Cir. (Ca.)); *Farrand v. Lutheran Brotherhood*, 993 F.2d 1253 (7th Cir. 1993).

compulsory arbitration.[5] Furthermore, at the time the Code was amended in 1993, it explained that the inclusion of new language in § 1 was not intended to broaden the category of matters subject to compulsory arbitration, but rather to clarify that employer-employee disputes indeed fell within the ambit of the Code's arbitration provisions.[6]

Second, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration... The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."[7] We have no doubt that the pre-1993 Code contemplated that employment-related claims were subject to mandatory arbitration. Even if, however, we were to

---

[5] 52 Fed.Reg. 9232 (1987).

[6] 58 Fed.Reg. 39071 (1993).

[7] *Moses H. Cone Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983). See also *Rojas v. TK Communications, Inc.*, 87 F.3d 745, 747 (5th Cir. 1996) (whenever the scope of an arbitration clause is in question, the court should construe the clause in favor of arbitration).

acknowledge an that the arbitration provisions at issue were ambiguous, we would nevertheless be compelled to conclude that they covered employment-related disputes.  Indeed, "to acknowledge the ambiguity is to resolve the issue, because all ambiguities must be resolved in favor of arbitrability."[8]

Third, we have already stated that an arbitration clause need not speak directly to employment-related disputes for it to mandate arbitration of Title VII claims.[9]  In *Rojas v. TK Communications, Inc.*,[10] we considered whether a radio station employee was compelled to submit her sexual harassment claim to arbitration under the terms of her employment contract.  When the plaintiff executed her contract, she agreed that "any action contesting the validity of [the contract], the enforcement of its financial terms, or other disputes [would] be submitted to

---

[8] *Armijo v. Prudential Insurance Co. of America* at 798.

[9] *Rojas v. TK Communications, Inc.*, 87 F.3d 745 (5th Cir. 1996).

[10] Id.

arbitration.  We held that the "other disputes" language in the

arbitration clause was sufficiently broad to encompass Title VII

claims.[11]  Even though we did not decide *Rojas* in the context of

the NASD's arbitration provisions, its reasoning should apply to

the case at bar.  Mouton agreed to arbitrate "any dispute, claim

or controversy that may arise between [himself] and

[Metropolitan]."  This language, like that at issue in *Rojas*, is

broad, and, we conclude, is sufficiently broad to encompass Title

VII claims.

## B. Remaining Issues

Mouton argues that his claim is not subject to compulsory

arbitration because it falls within § 1's exception for "disputes

involving the insurance business of any member which is also an

insurance company."  Two circuits have already rejected this

---

[11] <u>Id</u>. at 749.

argument.[12]  We reject it, too.  In *In re Prudential Insurance*

*Co. of America Sales Practice Litigation*, the Third Circuit held

that the NASD Code reflected "one clear expression of intent --

that employment disputes are subject to arbitration while

intrinsically insurance claims are not."[13]  Accordingly, it

concluded that a plaintiff's retaliation claim, which was wholly

unrelated to Prudential's insurance business, was subject to

compulsory arbitration.[14]  Likewise, in *Armijo v. Prudential*

*Insurance Co. of America*, the Tenth Circuit dismissed the

plaintiff's assertion that employment-related controversies

involving insurance companies were ineligible for submission to

arbitration.[15]  It reasoned:

Although Prudential is an insurance company, there is

---

[12] *In re Prudential Insurance Co. of America Sales Practice Litigation*, 133 F.3d 225 (3d Cir. 1998); *Armijo v. Prudential Insurance Co. of America*, 72 F.3d 793 (10th Cir. 1995).

[13] *In re Prudential Insurance Co.* at 234.

[14] Id.

[15] *Armijo* at 800.

> nothing unique about these discrimination claims by plaintiffs that involve the insurance business of Prudential.... Illegal employment discrimination, if it exists, involves an employer's statutory obligations as an employer rather than an insurer.[16]

We find this line of reasoning particularly persuasive. Mouton's Title VII claims involve Metropolitan's obligations as an employer rather than an insurer. As such, § 1's insurance business exception is inapposite here. Furthermore, were we to conclude otherwise, we would render virtually meaningless any arbitration agreements between companies involved in the insurance business and their NASD-licensed employees. That is, an expansive reading of the insurance business exception would deprive a company such as Metropolitan of the benefits of the arbitration system as embodied within the NASD Code.

Finally, Mouton argues that he cannot be compelled to arbitrate his Title VII claim because he did not knowingly and voluntarily waive his access to a judicial forum. We implicitly

---

[16] _Id_.

11

rejected this argument in *Rojas*, as has every court that has concluded that the pre-1993 NASD Code mandated arbitration of employment-related disputes.  Mouton agreed to arbitrate "*any* dispute, claim or controversy that may arise between [himself] and [Metropolitan]" (emphasis added).  We hold him to that agreement.

## III. Conclusion

For the reasons stated, Mouton is compelled to submit his Title VII claim to arbitration should he choose to go forward.  The district court's denial of Metropolitan's motion for summary judgment is REVERSED.  We REMAND for further proceedings consistent with this opinion.